**In the Matter of Daniel R. BERNING.**

**No. 1283 S 435.**

Supreme Court of Indiana.

Oct. 2, 1984.

Steven L. Langer, Valparaiso, for respondent.

William G. Hussmann, Jr., Staff Atty., Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

This matter is before this Court on a single count Verified Complaint filed by the

Indiana Supreme Court Disciplinary Commission charging the Respondent with violating Disciplinary Rule 7–108(D) of the *Code of Professional Responsibility for Attorneys at Law.* The Hearing Officer appointed by this Court pursuant to Ind.R. A.D. 23 has held a hearing and has submitted his findings of fact. Neither party has petitioned for review.

Upon examination of all matters presented herein, we find generally that the Respondent, Daniel R. Berning, is a member of the Bar of this State. On April 19, 1983, a misdemeanor battery case, *State v. Mark A. Martin,* was tried before a six-person jury in the Porter County Court. The jury returned a verdict of not guilty. Though he did not try the case, the Respondent was, during all relevant times, the elected prosecuting attorney for Porter County.

As a result of said verdict and in his official capacity as the prosecuting attorney of Porter County, the Respondent sent to each member of the jury in the *Martin* case, a letter. The letter was critical of the jury's decision and questioned their reasoning. It reads in part:

"... Needless to say, everyone involved in the prosecution of the case was terribly upset and shocked at the verdict of not guilty. Marilyn Martin had the difficult task of trying to explain to her children why Mr. Martin was able to get away with such an act without being punished for it. The victim was in tears because the finding of not guilty meant to her that the jury felt that she was a liar. The mother of the victim was in tears for the same reason. Even Steve Mullins was visibly upset by the finding of not guilty, and he is, in my opinion, not the type to let adverse decisions affect him emotionally. However, my purpose in writing is not to 'cry over spilled milk' because we lost the decision.

What I would like to do is get some insight from you as to how I should handle domestic violence cases. Our office has been criticized in the past for not doing more to help victims of domestic violence and, in particular, women who are beaten by their husbands. In the Martin case, we had a situation that stemmed from an ex-husband and ex-wife situation. The husband has been violent toward Mrs. Martin in the past, and, I'm afraid, will be violent toward her in the future. With three eyewitnesses to the event, the State had the absolute best possible case it could ever have. We seldom, if ever, have a witness to this type of offense other than the victim herself. Therefore, the message that I get from your decision as a juror is that I, as the prosecutor in this county, should not file domestic-type crimes at all.

I would really appreciate your contacting me in order to speak with me on the telephone or come in to see me in person. The next time that I have a woman in my office who claims to be the victim of being battered by her husband, I will advise her that I will not file the charge because of my past experiences in these types of cases. One of those cases is the Martin case where the State had three eyewitnesses to the battery and yet the defendant was found not guilty. If I am interpreting your decision incorrectly or I am getting the wrong message from your decision, I would really appreciate hearing that from you."

The letter was mailed on June 27, 1983, and was received and read by each one of the jurors. Their three-month jury term ended on June 30, 1983, though none of them served on a jury after receipt of the letter. The jurors' reactions included irritation, feelings of being harassed, anger, displeasure and embarrassment. Some felt the letter would influence their future jury service.

From the foregoing findings we conclude that the Respondent, as the duly elected prosecuting attorney with discretionary and supervisory authority, was a lawyer connected with the case. It is further apparent from the testimony of the jury members that Respondent's correspondence did harass and embarrass said jurors and would influence their future jury service.

Such conduct is clearly in violation of Disciplinary Rule 7–108(D) of the *Code*.

Having found misconduct, we must determine the appropriate sanction. The impartiality essential to our judicial process necessitates that jurors be protected against extraneous influences. The Respondent, by his critical and accusatory comments, has harassed the jurors for their decision and has sought to influence their future judgment in such cases. This conduct degrades the entire judicial process and diminishes the public's confidence in our judicial system. The Hearing Officer, on the other hand, does note that the Respondent appeared to be motivated by frustration and that the likelihood of further misconduct of this nature was negligible. In view of these considerations, we conclude that a public reprimand is appropriate under the circumstances of this case. Accordingly, the Respondent is hereby reprimanded and admonished for the misconduct under the Verified Complaint filed in this cause.

Costs of this proceeding are assessed against the Respondent.